# IN THE COURT OF APPEALS OF IOWA

No. 22-0983
Filed October 11, 2023

IN RE THE MARRIAGE OF LISA M. SIEFERING
AND RODNEY D. SIEFERING

Upon the Petition of
**LISA M. SIEFERING,**
        Petitioner-Appellant,

**And Concerning**
**RODNEY D. SIEFERING,**
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Henry County, Joshua P. Schier,

Judge.


        Lisa Siefering appeals the district court's denial of her contempt application

against her former husband.  **AFFIRMED.**


        Scott E. Schroeder of Clark & Schroeder, PLLC, Burlington, for appellant.

        Timothy B. Liechty of Bell, Ort & Liechty, New London, for appellee.


        Considered by Bower, C.J., and Badding and Buller, JJ.

**BADDING, Judge.**

Armed with an attitude of "it's not [my] problem," Lisa Siefering applied to have her former spouse, Rodney Siefering, held in contempt for failing to make monthly mortgage and insurance payments on a home he was awarded in their divorce. The district court declined to do so, and Lisa appeals.

Rodney and Lisa's marriage was dissolved in mid-July 2021, a little more than eleven years after they were married. During the marriage, the couple lived in a home that Lisa bought about five years before their wedding. The mortgage and deed were in her name only. Even though she moved out of the house in July or August 2020, Lisa kept making the monthly payments—which totaled $705 with insurance and taxes—through June 2021. The stipulated decree awarded the residence to Rodney and required him to "be responsible for the monthly mortgage, and insurance beginning July 1, 2021." Within ten days of the decree, Lisa was supposed to execute a quitclaim deed drafted by Rodney's attorney, and Rodney was to be provided with the abstract of title or information about its location.

Neither party complied with the decree. When Rodney's attorney sent Lisa a quitclaim deed to sign in mid-August, she refused because Rodney had missed the July and August mortgage payments. Lisa's refusal to sign the deed delayed Rodney's ability to refinance the mortgage on the home, which he said was necessary for him to afford the monthly payments. Lisa also refused to help Rodney find the abstract or pay to create a new one, telling Rodney it was "not her problem." Once Rodney found the abstract, Lisa would not allow Rodney's loan officer to contact the mortgage company for a payoff amount because, she said, "I

don't know [him], I don't bank with [him] and I didn't trust him." While Lisa eventually signed the deed in October, she held onto it "for leverage," according to Rodney, because she "wanted a certain amount of money. And if she didn't get that, she wasn't gonna close."

Amid these difficulties, Lisa sought to have Rodney held in contempt for, among other things, failing to "make house related payments." In response, Rodney filed a contempt application of his own against Lisa for her failure to cooperate in finding the abstract and for her failure to return an executed deed. At the hearing on the competing applications, Rodney testified that even though he was approved for refinancing in July 2021, the closing did not take place until March 2022 because of difficulties with Lisa. Rodney admitted that he did not make any monthly payments on the home during that time. But in his defense, Rodney claimed he didn't have enough money to do so until he refinanced,[1] which, but for Lisa's interference, would have happened much sooner. He also claimed that he did not know where or how to pay the mortgage because Lisa had all that information. Lisa testified, "Rodney and I were barely speaking, so no, I didn't think that he needed that information. I figured he had it."

In its ruling, the district court found Lisa did not meet her burden to prove "that Rodney's failure to make the mortgage and insurance payment was willful disobedience" of the decree. The court continued:

---

[1] Rodney testified that he gets paid on the twenty-fifth of each month, and he would pay his bills on the twenty-sixth. So the ending monthly balance on his checking account statements did "not account for all the checks that are out there that had not been processed yet." By the fourteenth of each month, Rodney's balance would dip to less than what was owed for the monthly payments on the home.

> While it was proved that Rodney failed to make the monthly payment, the court finds Rodney's reasons for not making the mortgage and insurance payments credible and the court finds that his efforts to refinance immediately were a reasonable effort to meet his responsibility for the mortgage and insurance payments. . . . [T]he court finds that Lisa's actions throughout Rodney's attempts to refinance undoubtedly contributed to the delay in refinancing and, as a consequence, the delay in paying off the mortgage.

The court then found Lisa in contempt for one of those actions—her failure to execute the quitclaim deed:[2]

> The decree simply states that Lisa is to execute the deed. Lisa failed to do so, and because of her failure to do so the refinancing for the real estate was repeatedly delayed. Lisa's failure to cooperate with executing the quit claim deed not only financially damaged Rodney by delaying his closing, but also hurt herself. She was aware that Rodney was unable to make the real estate payments without refinancing, which meant her credit was at jeopardy of being damaged. Yet she continued to withhold the deed because he would not make the real estate payment. But as long as she withheld the quit claim deed, he was unable to refinance and make the real estate payment. Lisa's reasoning makes no sense to the Court.

Summing up the contempts before it, the court concluded: "A little communication between the parties would have gone a long way to preventing this entire proceeding."

On appeal,[3] Lisa argues

> [t]here is no evidence, other than Rodney's self-serving testimony, that he did not know how to make the mortgage payments; that he asked Lisa for information on how to make those payments; or that his attorney put Lisa or her counsel on notice that Rodney did not know how to make the payments.

---

[2] The court also found Lisa in contempt for failing to delete a social media account. Lisa petitioned for a writ of certiorari on the two contempt findings against her, but the supreme court denied her petition before transferring the case to our court. *See* Iowa Code § 665.11 (2021).

[3] Lisa's appeal is limited to the court's refusal to find Rodney in contempt for failing to make the house payments, although the court also declined to find him in contempt for failing to satisfy an equalization payment.

Rodney's bank statements for the relevant time period clearly show that he had the funds to do so; he simply committed those funds elsewhere.

This argument does not get Lisa far given our standard of review.

"Because Iowa Code section 598.23 grants the district court discretion to not hold a party in contempt even if the elements have been established, our review of the district court's denial of the application for rule to show cause is for an abuse of discretion." *In re Marriage of Sheriff*, No. 14-1410, 2015 WL 4646493, at *3 (Iowa Ct. App. Aug. 5, 2015); *accord In re Marriage of Swan*, 526 N.W.2d 320, 327 (Iowa 1995). The district court's discretion on this front is broad, and its decision must stand unless that discretion is grossly abused. *Swan*, 526 N.W.2d at 327. "We are obliged to give great deference to the trial court on issues of witness credibility." *McKinley v. Iowa Dist. Ct.*, 542 N.W.2d 822, 825 (Iowa 1996); *accord In re Marriage of Dorman*, No. 13-1545, 2014 WL 2432292, at *2 (Iowa Ct. App. May 29, 2014).

Lisa's argument hinges on her dissatisfaction with the court finding that Rodney's explanations for not paying were credible, which led to the court's conclusion that his violations were not willful. *See Ary v. Iowa Dist. Ct.*, 735 N.W.2d 621, 624 (Iowa 2007) (defining willfulness). Because Lisa's appeal is really a request to overturn the district court's credibility assessment, we summarily reject it. *See, e.g.*, *In re Marriage of Tullis*, No. 21-0251, 2022 WL 1100296, at *2 (Iowa Ct. App. Apr. 13, 2022) (summarily rejecting a challenge to the district court's credibility assessments because "[t]he trial court has the advantage of listening to and observing the parties and witnesses and is in a better position to weigh the credibility of witnesses than the appellate court, which is limited to a written record"

(citation omitted)); *Bruske v. Bruske*, No. 17-0494, 2017 WL 6513629, at *3 (Iowa Ct. App. Dec. 20, 2017) (rejecting challenge to credibility determination veiled as an issue of sufficient evidence); *In re Marriage of Koster*, No. 16-1583, 2017 WL 6040575, at *5 (Iowa Ct. App. Dec. 6, 2017) (same); *Yates v. Knoblauch*, No. 12-1116, 2013 WL 1453247, at *3 (Iowa Ct. App. Apr. 10, 2013) (summarily rejecting mother's challenges to credibility determinations and resulting conclusions, noting "[w]e defer to the court's credibility determinations because it had the ability to hear the witnesses and observe their demeanor").

This leaves us with both parties' requests for appellate attorney fees. Attorney fees may only be taxed against a party found in contempt. *See* Iowa Code § 598.24; *Felton v. Iowa Dist. Ct.*, No. 21-1398, 2023 WL 1809820, at *6 (Iowa Ct. App. Feb. 8, 2023). Because we have affirmed the district court's finding that Rodney is not in contempt on the sole count Lisa raises on appeal, she is not entitled to an award of attorney fees. And as the party defending against contempt on appeal, Rodney is also not entitled to an award. *See In re Marriage of Shaman*, No. 14-0410, 2014 WL 7343748, at *2 (Iowa Ct. App. Dec. 24, 2014). We therefore deny both requests.

**AFFIRMED.**